UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**-vs-**  Case No. 6:05-cr-202-Orl-31DAB

**JAIRO MODESTO MIRANDA-GARCIA**

_____

**Memorandum Sentencing Opinion**

Defendant, Jairo Modesto Miranda-Garcia, is a citizen of Nicaragua.  His parents and most of his ten siblings reside in the United States.  On October 18, 2005, Defendant was "found" in the United States and charged with illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2).[1]  On January 26, 2006, Defendant pled guilty.  He is now before the Court for sentencing.

Enhanced by 16 levels under United States Sentencing Guideline (USSG) § 2L1.2(b)(1)(A)(ii) and adjusted for acceptance of responsibility, Defendant's offense level is 21.  His criminal history puts him in category II.  A guideline score of 21-II produces a guideline sentencing range of 41 to 51 months.

The guidelines now, of course, are only advisory.  *U.S. v. Booker*, 543 U.S. 220 (2005).  While the guidelines remain an important sentencing factor, the Court is obliged to consider all of the pertinent statutory factors in fashioning a reasonable sentence.  18 U.S.C. § 3553(a).

---

[1] He was previously deported on March 19, 1996 following a six-year prison term in California for armed robbery. After his arrest, the Defendant told an agent of United States Immigration and Custom Enforcement that he had re-entered the United States in June 2005 by walking across the Texas border. Doc. 1 at 3.

This Court has previously expressed its concerns over the arbitrary nature of the enhancement scheme under USSG § 2L1.2. *See United States v. Salazar-Pacheco*, 6:05-cr-137-ORL-31KRS at Doc. 44. In this case, given the violent nature of Defendant's prior offense, the Court believes that an enhancement is appropriate. However, in light of the length of time since this infraction, Defendant's youth at the time and the absence of criminal conduct since, the Court will use a 12-level enhancement for sentencing purposes.

Prior to sentencing, Defendant filed a motion for downward departure, contending that he should receive a four-level departure due to what is known as "fast-track disparity" – that is, the lack of a fast-track program for illegal reentry cases in this district. (Doc. 42 at 9). Although they vary as to their particulars, fast-track programs – also referred to as "early disposition programs" – generally provide reduced sentences for defendants who agree to a quick guilty plea and uncontested removal. Congress gave its sanction to such programs in the PROTECT Act of 2003, and the Sentencing Commission followed suit with USSG § 5K3.1, which permits up to a four-level downward departure in those districts where the United States has established such a program.[2] *See generally United States v. Linval*, 2005 WL 3215155 (S.D.N.Y. 2005). On October 24, 2003, the government authorized fast-track programs for illegal re-entry cases in the following

---

[2]In addition, there are apparently a significant number of districts that operate early disposition programs outside the bounds of § 5K3.1: "The government's submission reflects that there are two distinct types of fast track programs: those which, consistent with § 5K3.1 and the Congressional directive, rely on downward departures of up to four levels, and those which rely on charge-bargaining, in other words, where the defendant is permitted to plead guilty to a reduced charge." *United States v. Medrano-Duran*, 386 F.Supp.2d 943, 946 (N.D.Ill. 2005). Such charge-bargaining can result in a sentence reduction significantly greater than that which the defendant would receive as the result of a four-level downward departure. *Id.* at 947. For example, the defendant in *Medrano-Duran* faced a maximum sentence of seventy-one months. *Id.* After a four-level departure, he would have faced at most forty-six months; but applying the charge-bargaining criteria used in five fast-track districts would have resulted in a maximum sentence of only thirty months. *Id.*

districts: the Northern, Southern, Eastern and Central Districts of California; the Southern and Western Districts of Texas; the Western District of Washington; and the Districts of Arizona, Idaho, Nebraska, New Mexico, North Dakota, and Oregon. (Doc. 47 at 1-2). Since October 2003, the government has not established a fast-track program for illegal reentry cases in any other district.[3]

Under USSG § 5K3.1, only the government can file a motion for downward departure pursuant to an early disposition program. In addition, because Congress and the Sentencing Commission have approved the existence of early disposition programs, the Court cannot conclude that the lack of such a program in this district warrants a departure under USSG 5K2.0. And, since no other guideline appears to offer a basis for the proposed departure, the Defendant's motion must be denied.[4]

---

[3] In response to an inquiry from the Court, the United States Attorney's Office for the Middle District of Florida provided notice that it has applied for approval of a fast-track program. (Doc. 47 at 4). It is not clear from the government's response, however, whether the fast-track program would cover illegal re-entry cases or some other type of case. In any event, no fast-track program exists in this District as of the entry of this order. (Doc. 47 at 4). A letter from then-Attorney General John Ashcroft laying out the requirements for approval of a fast-track program in a particular district is attached as an exhibit to the government's response. (Doc. 47-4).

[4] In addition, it is not clear that the lack of a fast-track program in this district is relevant as to this particular defendant, as it is not clear that he would be eligible for a downward departure under § 5K3.1. According to the government, illegal reentry defendants may be excluded from fast-track consideration for, among other things, having been convicted of crimes of violence, "including convictions for murder, kidnaping, voluntary manslaughter, forcible sex offenses and child-sex offenses; or, if they have prior felony convictions for drug offenses, firearms offenses or convictions that otherwise reflect a serious violent crime that has resulted in injury to others." (Doc. 47 at 2). In addition, different districts' fast-track programs provide varying sentence reductions, so even if the Defendant would have qualified for a fast-track program, there is no way to know how much of a reduction he "lost" due to the fast-track disparity.

However, the existence of fast-track programs in some but not all areas of the country creates a situation where defendants guilty of identical offenses and with identical histories and characteristics receive significantly different sentences depending upon whether they are sentenced in a fast-track jurisdiction or not.  18 U.S.C. § 3553(a)(6) specifically instructs the Court to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Many judges dealing with this issue post-*Booker* (including other judges in this district) have concluded that the fast-track disparity is unwarranted.  As one such judge put it, "it is difficult to imagine a sentencing disparity less warranted than one which depends upon the accident of the judicial district in which the defendant happens to be arrested." *United States v. Bonnet-Grullon*, 53 F.Supp.2d 430, 435 (S.D.N.Y. 1999).  This Court agrees.

The consequences of this disparity are not simply academic or *de minimis*.  According to a recent report from the USSC,[5] the 13 districts with fast-track programs for illegal reentry cases include several with far fewer immigration cases than the Middle District of Florida (*e.g.*, Idaho, Nebraska and North Dakota).  *Booker* Report at E-25.  As of March 16, 2006, 28 percent of all post-*Booker* illegal reentry defendants nationwide received government-sponsored fast-track credit (and a corresponding below-guideline sentence).  United States Sentencing Commission, Special Post-*Booker* Coding Project (March 2006) (henceforth, "Coding Report") at 2.  Obviously, there

---

[5]United States Sentencing Commission, *Final Report on the Impact of United States v. Booker on Federal Sentencing* (March 2006) (henceforth, the "*Booker* Report").

were no fast-track departures in this District[6]. This is a huge disparity based solely on the happenstance of a defendant's location at the time of his or her arrest.

Considering all of the statutory sentencing factors,[7] and particularly 18 U.S.C. § 3553(a)(6), it is the judgment of this Court that Defendant should be sentenced to a term of 18 months. This term is consistent with an offense level of 13 (8 levels below this defendant's calculated guideline score) and a criminal history category of II. This sentence takes into account an appropriate enhancement for his prior criminal conduct, and seeks to avoid the unwarranted sentencing disparity resulting from this District's lack of an early disposition program.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on May 4, 2006.

                                                                                         GREGORY A. PRESNELL
                                                                                         UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Jairo Modesto Miranda-Garcia

---

[6] As other courts and commentators have noted, the exercise of prosecutorial discretion is a significant contributor to sentencing disparity in this country. *See, e.g.,* Albert W. Alschuler, *Disparity: The Normative and Empirical Failure of the Federal Guidelines*, 58 Stan. L. Rev. 85 (2005) (stating that "the price of whatever success the Guidelines have achieved in reducing judge-created sentencing disparities has been the burgeoning of prosecutor-created disparities."). The hidden nature of prosecutorial discretion makes its effect impossible to quantify, however.

[7] For a complete recitation of the Court's sentencing rationale, see the transcript of this sentencing proceeding held on April 13, 2006.